# Eubanks *v.* Anniston Mercantile Co.

*Bill to Foreclose With Cross Bill for Cancellation of Mortgage.*

(Decided April 13, 1911.   55 South. 98.)

1. *Principal and Agent; Evidence; Declaration of Agent.*—A declaration made by a husband, not made in the presence of his wife, that he was the agent of the wife to purchase a stock of goods, is not competent to establish the agency.

2. *Witnesses; Declarations of Persons Since Deceased.*—Evidence of declarations of a husband, since deceased, that he purchased certain goods in question as the agent of his wife, were inadmissible under section 4007, Code 1907.

[Eubanks v. Anniston Mercantile Co.]

3. *Husband and Wife; Wife as Surety for Husband.*—The evidence in this case stated and examined and held to require a finding that the wife signed the mortgage to secure a part of the price of a stock of goods as surety for her husband only, and not as an original undertaking of hers, thus rendering the mortgage invalid under the statute.

APPEAL from Calhoun Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Anniston Mercantile Co. against Ida L. Eubanks, to foreclose a chattel mortgage, with a cross bill by respondent to declare the mortgage void and for cancellation. Decree for complainant and respondent appeals. Reversed and original bill dismissed, and the prayer of the cross bill granted.

BLACKWELL & AGEE, for appellant. The declarations of Eubanks as to his agency were not admissible to show agency.—*Parker v. Bond*, 121 Ala. 530; *Learned L. Co. v. Ohatchee L. Co.* 111 Ala. 453. The signing by the wife without knowledge of the purchase on her own behalf did not bind her to a ratification of the purchase. —*Herren v. Skaggs*, 62 Ala. 180; *Wheeler v. McGuire*, 86 Ala. 398; 31 Cyc. 1253. One dealing with an agent is bound to ascertain the extent of the agent's authority. —*Wheeler v. McGuire, supra;* 86 Ala. 398; *Cummins v. Beaumont*, 68 Ala. 203; *Powell v. Cummins*, 27 Ala. 612. The burden of proving a disputed fact rests on the one who asserts it.—*L. M. I. Co. v. Preston*, 119 Ala. 290. Under the evidence in this case, it was the husband's debt.—*Belisle v. Clark*, 49 Ala. 98; *Crawford v. Barclay*, 18 Ala. 270; *Bell v. Teague*, 85 Ala. 211; *Price v. Cooper*, 123 Ala. 396.

LAPSLEY & ARNOLD, for appellee. Under the facts in this case the burden was on the wife to show that she signed only as surety for the husband.—*Sample v. Guyer*, and authorities there cited, 143 Ala. 613. On

these authorities it is insisted that the court properly found for the complainant.

SIMPSON, J.—The bill in this case was filed by the appellee against the appellant to foreclose a mortgage which was signed by the appellant and her husband, J. J. Eubanks (since deceased). The answer sets up the facts that she was a married woman at the time of the execution of the mortgage, and that it was signed by her as surety for her said husband's debt. The answer is made a cross-bill, and seeks the cancellation of said mortgage.

Said J. J. Eubanks was originally a partner in the firm of Eubanks & Cheney, which went into bankruptcy, and the stock of goods of said firm was bought, at bankruptcy sale, by the appellee, who placed said J. J. Eubanks, in charge of the stock of goods to sell and repay to appellee the money invested in the purchase of said goods. Subsequently a sale was made, as claimed by the appellee to said J. J. Eubanks, as the agent of his wife, the appellant, and the mortgage in question taken to secure the purchase money. So it is a question of fact whether or not the appellant bought the stock of goods, through her husband as her agent, and thus became liable for the purchase money secured by the mortgage on her separate estate.

The complainant does not claim that its agent who conducted the negotiations ever had any transaction with the appellant or ever saw her; but said agent testifies that said J. J. Eubanks told him that he was acting as agent for his said wife, which, of course, is not legal evidence to establish the agency, besides being illegal testimony under section 4007 of the Code of 1907. Said witness testifies that, after J. J. Eubanks had been operating the business for about two years, he went to

[Eubanks v. Anniston Mercantile Co.]

the place of business to investigate, and found that no proper accounts, vouchers, etc., were kept, and that the amount of money he had paid to said Mercantile Company lacked $500 or $600 of reimbursing said company the amount paid out by it, and he then made the sale of the stock of goods. It is evident that, even if said agent of said company thought that he was selling to said J. J. Eubanks as agent of his wife, yet unless she had authorized him to purchase for her, or consciously entered into the contract of purchase, it could not constitute a sale to her. It is true that her name is signed first to the mortgage; but the opening words of the mortgage state: "That in consideration that J. J. Eubanks and Ida L. Eubanks * * * is justly indebted,". etc., by two promissory notes, describing them, and the condition is that "If the said J. J. Eubanks and Ida L. Eubanks shall fully pay," etc. Under these recitals we cannot say that the mere fact that her name appears first in the signature creates any presumption that she was the principal in the transaction. It is true, also, that the $400 note is signed by Ida L. Eubanks alone, and that the $173.62 note is signed by both, with the wife's name first; but the notes were made at the same time, and the $400 note is identical in terms, to wit, "We or either of us promise to pay," etc., showing that the failure of one to sign was a mere oversight or omission.

The appellant testified positively that she did not purchase the goods, did not authorize her husband to purchase them for her, did not know anything about the purchase, but simply signed the mortgage and note at her husband's request, supposing that she was signing it to secure some debt due by him; that her husband never talked to her about the business; that she made no inquiries in regard to the business; that she never claimed any interest in the goods, or had any knowledge that

[Wiggins v. Skeggs, et al.]

it was claimed she had bought the goods until after her husband's death, and after what goods were then on hand had been set apart to her, out of her husband's estate, under the exemption laws. The chancellor seems to think that, because her testimony indicates that "she did not know at the time she executed the mortgage what it was for, she has not discharged the burden of proof resting on her to show that said mortgage was made to secure the debt of her husband." If she did know anything about it, she certainly did not buy the goods. There is no evidence tending to show that the husband had general authority to purchase a stock of goods for her. The evidence satisfies us that it was simply an attempt by the agent of the company, and the husband, to secure the indebtedness of the husband, by procuring a mortgage on the wife's lands.

The decree of the court is reversed, and a decree will be here rendered, dismissing the original bill, and granting the prayer of the cross-bill.

Reversed and rendered.

McCLELLAN, MAYFIELLD, and SOMEERVILLE, JJ., concur.